**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

U.S. BANK NATIONAL ASSOCIATION, a National Association, as Securities Intermediary for LIMA ACQUISITION LP,

Plaintiff,

v.

PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,

Defendant.

CASE NO. 12-877 JRT/TNL

**JURY TRIAL REQUESTED**

## COMPLAINT FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT

Plaintiff U.S. Bank National Association, as securities intermediary for Lima Acquisition LP ("Plaintiff"), hereby files this complaint against defendant PHL Variable Insurance Company ("Phoenix" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action seeking compensatory damages and equitable relief based on Phoenix's unjustified refusal to pay the death benefit due under a $3 million dollar life insurance policy insuring the life of Mr. John Doe (the "Doe Policy" or "Policy").[1]

2. Phoenix issued the Doe Policy more than four years ago, and since issuing the Policy, Phoenix has received $389,000 in premiums paid to keep the Doe Policy in force. Mr. Doe passed away on November 4, 2011. Shortly thereafter, Plaintiff, as the current owner of the Policy, timely submitted a proof of loss to Phoenix seeking payment of the death benefit under the Policy. Phoenix, however, has failed and refused to pay the death benefit, making various pretextual and unjustified excuses for its refusal in blatant violation of its obligations under the

[1] For privacy reasons, Plaintiff has substituted "John Doe" for the name of the actual insured.

SCANNED
APR - 6 2012
U.S. DISTRICT COURT MPLS

Policy.

3. Upon information and belief, Phoenix has deliberately failed and refused to pay this claim, along with claims submitted on a number of other policies owned by Plaintiff, in retaliation for Plaintiff filing a lawsuit alleging that Phoenix unlawfully raised the cost of insurance rates on many of Plaintiff's and other policyholders' policies. Plaintiff filed that lawsuit, *U.S. Bank National Association v. PHL Variable Insurance Company*, Case No. 2:11-cv-09517-OD (RZx) (the "COI Action"), in the Central District of California on November 16, 2011.

4. Before Plaintiff filed the COI Action, Phoenix promptly paid the death benefit on a claim under one of Plaintiff's other policies, but since Plaintiff filed the COI Action, Phoenix has not paid any of Plaintiff's death benefit claims. Plaintiff has thus been forced to file two other lawsuits in addition to this one seeking payment under other policies whose death benefits Phoenix has failed to pay. In other words, while the rest of the life insurance industry, on average, denies less than 2% of all death benefit claims, Phoenix has failed to pay 100% of Plaintiff's death benefit claims submitted since the COI Action was filed.

5. By improperly refusing to pay the death benefit under the Policy, Phoenix has forced Plaintiff to incur the substantial expense and delay of litigation in order to obtain the benefits of the Policy, even after Phoenix has collected premiums on it for approximately four years.

**PARTIES**

6. Plaintiff U.S. Bank National Association, is a national banking association with its principal place of business in Ohio, and is the securities intermediary for Lima Acquisition L.P.

7. Upon information and belief, Phoenix is a Connecticut insurance corporation with its principal place of business and nerve center in Harford, Connecticut, and Phoenix is authorized to do business in the State of Minnesota and regularly conducts its business in the State of Minnesota.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2) because Defendant resides in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district, including issuance of the Policy in Minnesota to a Minnesota trust.

## FACTUAL ALLEGATIONS

10. On or about June 2, 2008, John Doe established a Minnesota trust called the John Doe 2008A Irrevocable Trust (the "Doe Trust") pursuant to the John Doe 2008A Irrevocable Trust Agreement (the "Doe Trust Agreement").[2] The original trustee of the Doe Trust was BNC National Bank ("BNC"), which held the Policy in Minnesota. The original beneficiary of the Doe Trust was Jane Doe, Mr. Doe's wife. The Trust Agreement contemplated that the Trust would take out a loan from PFG Private Financing, LLC ("PFG") and use the loan proceeds to finance the purchase of a life insurance policy on Mr. Doe's life.

11. On or about June 4, 2008, Mr. Doe, along with BNC, in its capacity as trustee of the Doe Trust, submitted an application to Phoenix for a life insurance policy on Mr. Doe's life.

---

[2] As noted above, "John Doe" has been substituted for the true name of the insured, including within the name of the Trust. For the same privacy reasons, "Jane Doe" has been substituted for the true name of the insured's spouse.

In the application, Mr. Doe specifically disclosed that he intended to finance the premiums for the policy through a loan from PFG. Section XI, question 9 of the application asked, "Will the owner, now or in the future pay premiums funded by an individual and/or entity other than the proposed insured?" Mr. Doe checked the box marked "Yes" and wrote in, "Borrowed funds from PFG Private Funding."

12. On or about June 13, 2008, as contemplated in the Doe Trust Agreement and related documents, Mr. Doe and BNC, in its capacity as trustee of the Trust, entered into a Terms Financing Facility Agreement with PFG (the "Doe Financing Agreement"). Under the Doe Financing Agreement, PFG agreed to lend the Doe Trust a total of $257,200 to purchase the Doe Policy. The parties to the Doe Financing Agreement executed several other documents in conjunction with the loan that PFG extended to the Doe Trust, including a Borrower Pledge and Security Agreement, whereby the Doe Trust pledged the Doe Policy as security for the Doe Trust's obligations to repay the loan to PFG.

13. Mr. Doe agreed to personally guarantee the repayment of 25% of the Doe Trust's debt to PFG on terms set forth in a Limited Personal Guarantee executed in conjunction with the Doe Financing Agreement.

14. BNC, in its capacity as trustee, collaterally assigned the Doe Policy to PFG, as security for the Trust's debt.

15. PFG sent notice of the collateral assignment to Phoenix, which Phoenix recorded on June 16, 2008. On the same day, Phoenix sent a letter to BNC, in its capacity as trustee, and Mr. Doe, acknowledging receipt of the collateral assignment and notifying BNC that it would record the collateral assignment when it issued the Doe Policy.

16. PFG also filed a public UCC Financing Statement indicating that PFG was a

secured creditor of BNC, as trustee for the Doe Trust, and that the Doe Policy served as collateral securing the Doe Trust's obligations to PFG.

17. Phoenix issued the Doe Policy, Policy No. 97528505, with a face value of $3,000,000 and delivered it to the trustee of the Doe Trust and Mr. Doe on June 23, 2008. A copy of the Doe Policy is attached hereto as Exhibit 1.[3] The Policy was issued with an Issue Date and Policy Date of January 21, 2008. The Doe Trust was listed as the sole owner and beneficiary of the Policy.

18. Upon information and belief, the terms of the PFG premium finance loan, including the provisions of the Doe Financing Agreement (defined above) and related documents, were all disclosed to Phoenix before Phoenix issued the Doe Policy.

19. Upon information and belief, the terms of the PFG premium finance loan, including the provisions of the Doe Financing Agreement and related documents, were all approved by Phoenix before Phoenix issued the Doe Policy.

20. Minnesota Statutes section 61A.03 requires that every life insurance contract include a provision that the policy "is incontestable after it has been in force during the lifetime of the insured for two years from its date." Section 21 of the Policy provides that the "policy shall be incontestable after it has been in force during the Insured's lifetime for two years from the Issue Date . . . ."

21. On August 21, 2009, the Trust and PFG entered into a Delayed Transfer Agreement (the "Doe Transfer Agreement") pursuant to which the Doe Trust agreed to transfer the Doe Policy to PFG in satisfaction of the full amount of the loan. Mr. Doe, Mrs. Doe, and the Doe Trust all consented to the transfer of the Doe Policy in writing.

[3] Some of the policy information is redacted for privacy reasons.

22. On or about October 1, 2009, the Doe Trust sent Phoenix a Designation of Owner and Designation of Beneficiary form indicating the change of ownership of the Doe Policy to PFG. One week later, on October 8, 2009, Phoenix sent a letter to BNC, as trustee for the Doe Trust, stating that Phoenix had recorded the change of the owner and beneficiary under the Doe Policy.

23. Plaintiff subsequently acquired the Doe Policy after the expiration of the contestability period, and Plaintiff thereafter continued to make all premium payments on the Doe Policy.

24. From the time the Doe Policy was issued until the Policy matured, all of the premiums that were due under the Doe Policy were paid. Indeed, throughout the contestability period and after, Phoenix continued to accept premiums on the Policy, including $194,000 in premiums that were paid after the policy became incontestable. In total, Phoenix received $389,000 in premiums on the Policy.

25. Additionally, on September 22, 2010, well after the contestability period, Phoenix provided a Verification of Coverage for the Policy, and did not raise any questions about the Policy, or indicate that there were any issues with it.

26. Mr. Doe died on November 4, 2011, while the Policy was in force. The Policy states: "If the Insured dies while the policy is in force, we will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured no later than two months after receipt of such proof, subject to any applicable provisions of the policy." Policy, p. 9 (Exhibit 1).

27. Upon information and belief, Phoenix became aware of Mr. Doe's death shortly after his death on November 4, 2011. On November 14, 2011, Phoenix sent a letter to Mr. Doe's

widow requesting certain documents needed to process a claim for the death benefit. The letter requested: (a) a certified copy of the death certificate; (b) completion and return of an enclosed Beneficiary Statement; (c) completion of an enclosed Affidavit as to the Extent of Interest form; and (d) return of the policy. Phoenix did not at this time express any concerns or issues about the Doe Policy. A copy of Phoenix's correspondence dated November 14, 2011 is attached hereto as Exhibit 2.

28. On November 16, 2011, Plaintiff filed the COI Action.

29. On December 22, 2011, Plaintiff submitted a claim to Phoenix requesting payment of the death benefit owed under the Doe Policy. Plaintiff also provided Phoenix with all of the documents requested in Phoenix's November 14, 2011 letter, including a copy of Mr. Doe's death certificate, a completed Beneficiary Statement and completed Affidavit as to the Extent of Interest, and the original Policy.

30. Phoenix responded to Plaintiff's claim by letter dated January 6, 2012, in which it asserted that "issues" had been raised concerning Mr. Doe's consent to the Doe Policy, the circumstances surrounding the Doe Policy's application, and the existence of an insurable interest at the time of issuance. A copy of Phoenix's correspondence dated January 6, 2012 is attached hereto as Exhibit 3.

31. Phoenix did not specify what "issues" had been raised, or the basis for its belief that a valid insurable interest may not have existed at the time the Doe Policy was issued. Rather, Phoenix vaguely stated that it would be conducting an investigation into "the circumstances surrounding Mr. Doe's application for the Policy" over three years earlier.

32. In an obvious attempt to engage in post-claim underwriting, Phoenix also demanded that Plaintiff produce a host of documents in connection with its investigation, most of

which had nothing to do with Mr. Doe's consent to the Policy or the existence of an insurable interest at the time the Policy was issued, and many of which Phoenix likely had in its possession.

33. Plaintiff responded to Phoenix's demands in a letter dated January 20, 2012. Plaintiff advised that it had already provided Phoenix with a copy of Mr. Doe's death certificate, a completed Beneficiary Statement, a completed Affidavit as to the Extent of Interest, and the original Doe Policy, which was all that was required for Phoenix to process the claim. Plaintiff then made a second request that Phoenix pay the claim. Plaintiff also explained that, as Phoenix already knew, the Policy was originally issued to the Doe Trust as the original owner and beneficiary of the Policy. The original beneficiary of the Doe Trust was Jane Doe, Mr. Doe's wife. Under Minnesota law, Mrs. Doe indisputably had an insurable interest in Mr. Doe's life. A copy of Plaintiff's correspondence dated January 20, 2012 is attached hereto as Exhibit 4.

34. Notwithstanding its clear obligation to pay the death benefit, on January 27, 2012, Phoenix responded to Plaintiff's January 20, 2012 letter by once again refusing to pay the death benefit, insisting that Mrs. Doe had "raised issues concerning Mr. Doe's lack of consent to the insurance and the circumstances surrounding the application or the Policy and the establishment of the Trust." A copy of Phoenix's correspondence dated January 27, 2012 is attached hereto as Exhibit 5.

35. Phoenix's purported concern about whether Mr. Doe "consented" to the insurance was clearly disingenuous given that Mr. Doe signed the Policy application, the Policy, and the Policy Delivery Receipt, among many other documents he signed and submitted to Phoenix when he obtained the Policy.

36. Nevertheless, on February 16, 2012, in response to Phoenix's alleged concerns

about whether Mr. Doe consented to the insurance, Plaintiff provided Phoenix with a copy of an Acknowledgment and Consent by Insured, Insured's Spouse and Beneficiary (the "Consent"), which was executed by Mr. and Mrs. Doe and notarized on August 21, 2009 in conjunction with Mr. and Mrs. Doe's execution of the Delayed Transfer Agreement. In the Consent, Mr. and Mrs. Doe represented and warranted, among many other things, that the transfer of the Doe Policy was made on their "own initiative, (b) voluntarily, (c) willingly, (d) without any undue influence or financial duress, . . . (h) after considering the advantages and disadvantages of a sale of the Policy and the other alternatives available, including retaining or otherwise selling the Policy, or borrowing against the cash value of, or surrendering the Policy . . . ." Consent § 1.7. A copy of Plaintiff's correspondence dated February 16, 2012 is attached hereto as Exhibit 6.

37. On March 1, 2012, Phoenix acknowledged receipt of the Consent but once again refused to pay the death benefit because it claimed it was still evaluating "the circumstances surrounding the issuance of the Policy." Phoenix also continued to demand that Plaintiff produce all of the numerous categories of documents that it originally demanded in its correspondence dated January 6, 2012, including, among other things, documents "reflecting the income and net worth of Mr. Doe at the time the policy was applied for" and documents "reflecting any estate plan developed for Mr. Doe." A copy of Phoenix's correspondence dated March 1, 2012 is attached hereto as Exhibit 7.

38. Not only does Plaintiff not have many of these documents, but such documents have nothing to do with Phoenix's purported concern about Mr. Doe's consent to the insurance or whether the policy was issued to someone with an insurable interest. Phoenix's requests were nothing more than an attempt to re-underwrite the Policy after learning of Mr. Doe's death. Indeed, Phoenix never disputed that the Policy was originally issued to the Doe Trust and that

the original beneficiary of the Doe Trust was Mr. Doe's wife, who clearly had an insurable interest in Mr. Doe's life. Thus, on March 9, 2012, Plaintiff made a final demand that Phoenix pay the death benefit under the Policy. A copy of Plaintiff's correspondence dated March 9, 2012 is attached hereto as Exhibit 8.

39. Minnesota Statutes section 72A.201, subdivision 4(11) requires an insurer to advise the insured in writing of the acceptance or denial of a claim "within 60 business days after receipt of a properly executed proof of loss." Subdivision 4(11) further provides that "[n]o insurer shall deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to the provision, condition, or exclusion is included in the denial." It has been more than 60 business days since Plaintiff filed the proof of loss on December 22, 2011, and Plaintiff has not received any notice that complies with section 72A.201.

40. As of the date hereof, Phoenix still has failed and refused to pay the death benefit under the Doe Policy.

## FIRST CAUSE OF ACTION

### For Breach of Contract (Express)

41. Plaintiff realleges the allegations contained in paragraphs 1 through 40.

42. The Doe Policy is a binding and enforceable contract of insurance issued by Defendant.

43. Plaintiff is the current owner and beneficiary of the Doe Policy.

44. Plaintiff has performed all of its obligations under the Doe Policy.

45. Defendant breached the Doe Policy by failing and refusing to pay the death benefit due under the Policy.

46. As a direct and proximate cause of Defendant's material breaches of the Policy,

Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### For Unjust Enrichment

47. Plaintiff realleges the allegations contained in paragraphs 1 through 40.

48. The premiums due under the Policy were fully paid to Defendant, by Plaintiff and prior owners of the Policy, through the maturation of the Policy.

49. Defendant has retained these premium payments and has refused to pay the benefit due under the Policy.

50. Defendant's retention of the premiums and refusal to pay the benefit under the Policy has unjustly enriched Defendant at Plaintiff's expense.

51. As a direct and proximate cause of Defendant's conduct, Plaintiff seeks an order requiring Defendant to pay the death benefit due under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

### On the First Cause of Action

1. For damages in an amount to be determined at trial, but not less than the benefits due on the Doe Policy;

2. For an award of pre-judgment and post-judgment interest;

3. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

4. For such other and further relief as the Court may deem proper.

### On the Second Cause of Action

1. For an order requiring Defendant to pay the benefits due under the Policy;

2. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

3. For such other and further relief as the Court may deem proper.

DATE: ~~March~~ April 6, 2012

THOMAS F. NELSON (#154040)
STEVEN P. ZABEL (#235866)
Leonard, Street and Deinard
Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500

*Of Counsel:*

STEPHEN G. FORESTA
PHILIPP SMAYLOVSKY
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-3742
Facsimile: (212) 506-5151

KHAI LEQUANG
MELANIE D. PHILLIPS
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, California 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for Plaintiff U.S. Bank National Association, as Securities Intermediary for Lima Acquisition LP

LEONARD
STREET
AND
DEINARD

150 SOUTH FIFTH STREET SUITE 2300
MINNEAPOLIS, MINNESOTA 55402
612-335-1500 MAIN
612-335-1657 FAX

STEVEN P. ZABEL
612-335-1675 DIRECT
STEVEN.ZABEL@LEONARD.COM

April 6, 2012

***VIA MESSENGER***

Clerk of U.S. District Court
U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415

***Re:*** ***U.S. Bank National Association v. PHL Variable Insurance Company***

Dear Sir/Madam:

With reference to the above matter, enclosed for filing please find plaintiff's Summons, Complaint and Civil Cover Sheet.

Also enclosed is our firm draft in the amount of $350.00, representing the filing fee.

Thank you.

Very truly yours,

LEONARD, STREET AND DEINARD

Steven P. Zabel

SPZ/pc
Enclosures

Check # 276777

6444177v1
6444177v1