# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *a National Association, as Securities Intermediary for Lima Acquisition LP*, | Civil No. 12-877 (JRT/TNL) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON SPECIAL MASTER ORDER NO. 3** |
| v. | |
| PHL VARIABLE INSURANCE COMPANY, | |
| Defendant. | |

Jessica S. Carey, Martin Flumenbaum, Allan J. Arffa, Jeffrey Newton, and Evan A. Kubota, **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, 1285 Avenue of the Americas, New York, NY 10019, Thomas F. Nelson and Kadee J. Anderson, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for plaintiff.

Kendall J. Burr, Thomas F. A. Hetherington, David T. McDowell, Jarrett E. Ganer, and Jessica L. Wilson, **EDISON, MCDOWELL & HETHERINGTON LLP**, 3200 Southwest Freeway, Suite 2100, Houston, TX 77027, and Douglas Elsass and Adam A. Gillette, **FRUTH, JAMISON & ELSASS, PLLC**, 3902 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for defendant.

Defendant PHL Variable Insurance Company ("PHL") has objected to Special Master Order No. 3, (Special Master Order No. 3, Nov. 17, 2015, Docket No. 309). Specifically, PHL objects to the Special Master's finding that portions of a report written by attorneys were not privileged, and therefore, must be provided to Plaintiff U.S. Bank National Association ("U.S. Bank") in discovery. PHL has not met its burden to

establish that the report as a whole is protected by attorney-client privilege or the work-product doctrine.  However, the Court finds that a few portions of the report do provide legal advice.  Therefore, the Court will sustain in part and overrule in part PHL's objections to the Special Master Order.

## BACKGROUND[1]

The underlying dispute centers on a $3 million life insurance policy initially issued by PHL to a trust in the name of an individual and later sold to U.S. Bank.  The parties dispute whether the original sale of the policy constituted a stranger-originated life insurance ("STOLI") purchase, where a purchaser is promised a cash payment in exchange for participating in the transaction.  (*See* Def.'s Answer to Pl.'s Second Am. Compl. at 44-45, June 28, 2013, Docket No. 174.)  U.S. Bank brings this action against PHL alleging claims of breach of contract, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").  U.S. Bank alleges that PHL knew that the policy had been transferred to a third party and continued to accept premium payments and represent that the policy was in force without expressing any concerns or conducting any investigation.  (Second Am. Compl. ¶¶ 42-54, Nov. 19, 2012, Docket No. 39.)  U.S. Bank alleges that while continuing to accept premiums on the policy, PHL secretly intended to later "claim that the . . . Policy was never in force and had no value,

---

[1] Additional background information can be found in the Court's three prior orders in this case:  *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-877, 2015 WL 6549595 (D. Minn. Oct. 27, 2015); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-877, 2014 WL 2856447 (D. Minn. June 23, 2014); and *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-877, 2013 WL 2936099 (D. Minn. June 14, 2013).

but rather was void or potentially void." (*Id.* ¶ 166.)  In a prior order, this Court denied PHL's motion to dismiss U.S. Bank's CUTPA claim, finding that accepting U.S. Bank's allegations – that PHL "believed that the Policy had not been validly issued and intended to challenge it as void" – as true, "it would have been misleading for PHL to repeatedly inform U.S. Bank that the Policy was in force and continue to collect premiums from U.S. Bank without disclosing this information." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-877, 2013 WL 2936099, at \*10 (D. Minn. June 14, 2013).

The present objections relate to a 39-page report authored by three attorneys at the law firm Bracewell & Guiliani LLP (the "Report" or the "Bracewell Report") in 2007. According to PHL, it "hired the Bracewell law firm for the purpose of seeking legal consultation, advice and counsel regarding PHL's litigation risk and exposure" relating to STOLI transactions.  (Def.'s Obj. to Special Master Order No. 3, Attach. 6 ("Tedone Decl.") ¶ 5, Dec. 8, 2015, Docket No. 314.)  It chose Bracewell because its attorneys had "recognized and specialized expertise . . . in legal matters involving STOLI and insurable interest law." (*Id.*)  The authors of the Report, Thomas Hetherington, David McDowell, and Jarrett Ganer, are trial attorneys who "were at the forefront of litigation involving this new STOLI threat" and had "circulated a paper analyzing insurable interest law and STOLI." (*Id.*, Attach. 1 ("Ganer Decl.") ¶ 3.)  The Report analyzed "the legal risks facing PHL," discussed "insurable interest law and the legal risks associated with STOLI," and gave "recommendations regarding various actions and detection methods that PHL could implement to mitigate legal risks associated with STOLI." (*Id.* ¶ 6.)

On November 2, 2015, U.S. Bank submitted a letter asking the Special Master to review certain documents *in camera*, including the Bracewell Report.   (Decl. of Jeffrey O. Newton ("Newton Decl."), Ex. F, Dec. 15, 2015, Docket No. 317.)   Upon review, the Special Master concluded that pages 1-14 and 20-26 of the Bracewell Report were not privileged, and ordered those portions produced.  (Special Master Order No. 3 at 1.)   PHL twice requested that the Special Master clarify or reconsider the decision. (Newton Decl., Exs. J, L.)  PHL now objects to the Special Master's order, arguing that the entire Report is protected by both attorney-client privilege and the work-product doctrine, or that at least additional portions of the Report are protected under both doctrines.

## DISCUSSION

Pursuant to a prior order, the Special Master's decisions are reviewed *de novo*. (Order Appointing Special Discovery Master at 3, Oct. 26, 2015, Docket No. 304.) Under both Connecticut and Minnesota law,[2] the party asserting the privilege bears the burden of establishing that it applies.  *Blumenthal v. Kimber Mfg., Inc.*, 265 Conn. 1, 11 (Conn. 2003); *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998).  Generally, attorney-client privilege applies to communications "made in confidence for the purpose

---

[2] The parties dispute whether Minnesota or Connecticut law applies.  In this action, the materials are unprivileged if they are found unprivileged under either Minnesota or Connecticut law, absent a strong public policy to exclude under Minnesota law or a special reason to apply Connecticut law favoring exclusion.  *See State v. Heaney*, 689 N.W.2d 168, 175-76 (Minn. 2004).  However, the applicable law in either state does not differ significantly, and thus, the Court need not decide which law applies.

of seeking legal advice." *Olson v. Accessory Controls & Equip. Corp.*, 757 A.2d 14, 25 (Conn. 2000) (quoting *State v. Gordon*, 504 A.2d 1020, 1025 (Conn. 1985)).

PHL contends that the Report should be presumed privileged because it was created by attorneys in response to PHL's request for legal advice. *See, e.g.*, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1977) (finding that "a matter committed to a professional legal adviser is prima facie so committed for the sake of the legal advice" and therefore, is privileged absent a clear showing to the contrary). However, a document is not automatically privileged merely because it involves an attorney and a client or because it is labeled privileged or confidential. *Kobluk*, 574 N.W.2d at 441; *Blumenthal*, 265 Conn. at 15 (finding that "[w]hether a document expressly is marked as 'confidential' is not dispositive").

Additionally, U.S. Bank challenges PHL's contention that the attorneys were retained for the purpose of seeking legal advice. U.S. Bank points to contemporaneous documents suggesting that the advice was business-oriented. For example, a November 7, 2007, email states that PHL retained

> an outside firm "Bracewell and Giuliani" to review our current procedures and provide recommendations to us on how to improve the detection and prevention of life insurance sales intended to be investor owned. They have provided this type of service to others serious about ensuring the quality of business and bring to [PHL] expertise in this field.

(Newton Decl., Ex. O.)  Another email referred to the firm's activities with PHL as "consulting."  (*Id.*, Ex. P.)  A presentation given at a risk management meeting stated, "Bracewell and Giuliani recommendations – majority implemented from **business plan**." (*Id.*, Ex. Q at PHL-0877 964644 (emphasis added).)  Finally, another presentation stated

that PHL "[e]ngaged Bracewell & Guiliani law firm to assess and recommend STOLI prevention tactics." (*Id.*, Ex. R at PHL-LIMA 03668592.)   PHL has not convinced the Court that they retained Bracewell & Guiliani primarily for the purpose of obtaining legal advice.   Rather, the majority of the Report suggests improvements to PHL's business practices aimed at resolving what the first page of the Report refers to as the "clear **economic** risk" presented by STOLI policies.   Thus, to the extent that there is a presumption that communications between an attorney and client are in pursuit of legal advice, U.S. Bank has shown evidence rebutting that presumption.[3]   Accordingly, the Court will not find the Report as a whole protected by attorney-client privilege.

PHL also contends that the entire Report is protected by the work-product doctrine because it was drafted in anticipation of litigation.   Under Federal Rule of Civil Procedure 26(b)(3)(A), "[o]rdinarily, a party may not discover documents . . . that are prepared in anticipation of litigation or for trial . . . by or for another party or its representative."   "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party."   *In re Murphy*, 560 F.2d 326, 334

---

[3] PHL relies on a Ninth Circuit case, *United States v. Chen*, which held that "[i]f a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice.'"   99 F.3d 1495, 1501 (9th Cir. 1996).   The presumption would be "rebutted when the facts show that the lawyer was 'employed without reference to his knowledge and discretion in the law.'"   *Id.*   PHL argues that U.S. Bank has not shown that the authors of the Report were retained without reference to their knowledge and discretion in the law.   However, PHL provides no cases suggesting that *Chen* has been adopted by either Connecticut or Minnesota courts.   Additionally, the presumption described in *Chen* does not reconcile well with Minnesota and Connecticut cases suggesting that the burden is on the party seeking to prevent disclosure.   *See Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11-247, 2014 WL 953546, at *2 (S.D. Ohio Mar. 11, 2014) (rejecting party's attempt to apply *Chen* in part because the applicable circuit "has repeatedly stated that the party advancing the attorney-client privilege bears the burden of establishing it applies").

(8th Cir. 1977).  At the same time, ordinary business advice is not protected by the work-product doctrine simply because it involves an attorney; the work-product doctrine does not automatically apply because "the **subject matter** of a document relates to a subject that might conceivably be litigated" or because "the materials were prepared by lawyers or represent legal thinking."  *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009).  "Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category."  *Id.*; *see Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (finding that "risk management documents" were not prepared for the purpose of litigation, and affirming district court's conclusion that "risk management documents [were] in the nature of business planning documents").

Here, PHL contends that the Report was prepared in anticipation of potential litigation, and that such litigation was actually filed.  It cites only conclusory statements in two declarations that the Report was "prepared" or "drafted in anticipation of litigation" and that "PHL pursued litigation on several policies discussed in the [R]eport after the [R]eport's delivery to PHL."  (Ganer Decl. ¶ 8; Tedone Decl. ¶ 7.)  The fact that the subject matter of the Report could conceivably be litigated and likely was litigated at some point is not determinative.  The Report was prepared long before this action was filed, and PHL has not pointed to any particular litigation anticipated by the Report.  Additionally, in reviewing the Report, the Court finds that it was not "mapping litigation strategy."  *Simon*, 816 F.2d at 401.  The Report is primarily a business planning document aimed at minimizing the economic risk of STOLI policies.  Thus, the Court finds that the Report as a whole was not drafted in anticipation of litigation.

Because the Report is not categorically protected by attorney-client privilege or the work-product doctrine, the Court turns to PHL's second argument – that even if the Report as a whole is not protected under either doctrine, the Court should review certain portions of the Report that the Special Master found unprotected.   PHL challenges disclosure of these portions of the Report on three primary bases.

First, PHL argues that some of the pages ordered disclosed contain summaries of other portions of the Report found protected, which PHL argues is inconsistent.   PHL contends that pages 2-5 of the Report disclose the "exact same information" contained on pages 14-20 and 26-39, which were already deemed privileged by the Special Master.   Thus, PHL requests that it be able to redact pages 2-5 to protect certain information.

Contrary to PHL's contentions, the summary on pages 2-5 does not contain the exact same information as the pages that the Special Master found protected.   Instead, much of the summary includes only the business recommendations found in the other pages, seeking to prevent STOLI policies in the future, and not legal advice, analysis, or information seemingly in preparation of litigation.   However, the Court does find that Section B.1, found on page 3 of the Report, is privileged because it relates to the more legal discussion found protected by the Special Master in the protected section.   Additionally, the Court finds that much of the first two paragraphs on page 2 of the Report also summarize information on the protected pages, including some legal analysis.   Therefore, the Court will sustain PHL's objection with regard to those portions, and PHL may redact those portions of the Report before disclosing it to U.S. Bank.

Second, PHL challenges disclosure of portions of the Report that reflect interviews with PHL employees, which it argues are protected by both the attorney-client privilege and work-product doctrine.  In *Diversified Industries*, the Eighth Circuit held that

> attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

572 F.2d at 609.  The burden to show these elements is on the corporation seeking protection.  *Id.*

Here, as discussed above, PHL has not shown that it sought legal advice or that it represented to its employees that it sought legal advice.  Instead, it represented internally that the firm was acting as a consultant and referred to the Report as a "business plan."  Thus, PHL has not met its burden of showing that the communication was made for the purpose of seeking legal advice or that any employee was directed to divulge information to seek legal advice for the corporation.  Accordingly, the employees' interview statements are not protected by either attorney-client privilege or the work-product doctrine.

Finally, PHL argues generally that portions of the Report that make specific recommendations should be protected as legal advice.  However, as discussed above, aside from the additional portions this Court finds protected, the rest of the recommendations are improvements to PHL's business practices in order to minimize the economic risk of STOLI transactions and not legal recommendations.

- 9 -

Overall, aside from the additional redaction discussed above, PHL has not met its burden of demonstrating that the authors of the Bracewell Report were retained and did act as legal advisers when creating the Report, or that the Report was prepared in anticipation of litigation.  Thus, the Court will sustain PHL's objections only for the limited portions of the Report that summarize legal advice, and not for the majority of the Report that provides business advice and business recommendations.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS in part** and **OVERRULES in part** PHL's objections [Docket No. 313] and **AFFIRMS in part** and **REVERSES in part** the November 17, 2015, Special Master Order No. 3 [Docket No. 309].   Accordingly, **IT IS HEREBY ORDERED** that:

1.     The following additional pages of the Bracewell Report are privileged and may be redacted:

    a.     Language located on page 2, beginning at the end of the first sentence through the end of the second paragraph.

    b.     Language on page 3, the entire Section B.1.

2.     In all other respects, Special Master Order No. 3 remains in effect.


DATED:  March 30, 2016                    _s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                              Chief Judge
                                                 United States District Court